IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JAMES E. MACKLIN,

    Plaintiff,

v.                                                          Cause No.:  2:08-cv-02667

DELTA METALS COMPANY, INC., a Tennessee
Corporation,

    Defendant.

---

PLAINTIFF'S AMENDED POST-TRIAL BRIEF

---

    The Parties stipulate to all elements of Plaintiff's prima facie case under the FLSA. It is agreed that Defendant is a covered employer and Plaintiff is an employee as defined by the Act. It is further agreed that Plaintiff worked more than 40 hours per week and Plaintiff was not paid time and one-half his regular rate for his hours over 40. The Parties further stipulate that, in the event Plaintiff is to be awarded damages, his back wages under the two-year statute of limitations are $300.15, and his back wages under the three-year statute of limitations are $1,041.15. Thus, Plaintiff has met his burden of proof under the FLSA. To avoid liability, Defendant's burden is significant and cannot be met in this matter.

    Defendant carries the heavy burden of establishing that Plaintiff was exempt from the overtime provisions of the FLSA. Here, Defendant must satisfy the duties test and the salary test to show Plaintiff was properly classified as exempt. *Acs v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006) (*citing* 29 C.F.R. §§ 541.100, 541.101, 541.118, 541.200, 541.204, 541.300, 541.303, 541.304). Defendant's actual practice of making improper deductions from Plaintiff's

salary demonstrates that it did not intend to pay Plaintiff on a salary basis and results in the loss of the exemption.  29 C.F.R. § 541.603(a); *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Mich. Ass'n of Gov't Employees v. Mich. Dep't of Corr.*, 992 F.2d 82, 84 (6th Cir.1993) (*citing Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir.1983)).  As Defendant has not met its burden, Plaintiff is due to prevail in this case.  The only remaining issues relate to Defendant's knowledge and intent.

This Court must determine whether Defendant acted in Good Faith, and whether Defendant's violation was willful.  These issues are intertwined and where there is a finding of willfulness, there is no discretion for good faith.  *Alvarez Perez v. Sandford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1166 (11th Cir. 1994).

Defendant's poor attempt to disguise Plaintiff's hourly pay as salary to avoid paying Plaintiff time and one-half for his over time hours worked was willful.   Defendant's reckless disregard for the reality of Plaintiff's compensation structure constitutes a willful violation of the FLSA.  Therefore, the three, rather than two-year statute of limitations is proper.  Thus, this Court should enter an Order finding: (1) Plaintiff is entitled to $1,041.15 in unpaid overtime wages; (2) an equal amount of $1,041.15 in liquidated damages; and (3) that a 3 year statute of limitations is applicable to this case.

**I.     FLSA Exemptions Must be Construed Narrowly Against the Employer and in Favor of the Employee.**

It has long been established that coverage under the FLSA should be broadly construed in favor of the employee, and exemptions narrowly applied against an employer.  *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516 (1950); *see also Douglas v. Argo-Tech Corp.,* 113 F.3d 67, 70 (6th Cir. 1997).  The employer bears not only the burden of proof, but also the burden on each element of the claimed

exemption. *Douglas*, 113 F.3d at 70.  That is, the employer bears the heavy burden to prove that a particular exemption applies by "clear and affirmative evidence," and if the record is unclear as to one or more of the exemption's requirements, the employer will be held not to have satisfied its burden. *See Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir.1992).

> II. **Defendant Bares the Burden of Proof for Demonstrating that Plaintiff was Properly Classified as a White Collar, Exempt Employee under the Act.**

To establish an overtime exemption for executive, administrative or professional employees, 29 U.S.C. § 213(a)(1), an employer must satisfy three tests: a (1) duties test; (2) salary level test; and (3) salary basis test.  *Acs v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir.2006) (*citing* 29 C.F.R. §§ 541.100, 541.101, 541.118, 541.200, 541.204, 541.300, 541.303, 541.304).  Here, Defendant cannot meet the third test – the salary basis test.

> A. **The Salary Basis Test is not Met.**

An employee is paid on a "salary basis" if the employee "regularly receives each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).  "Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability ... if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability."  29 C.F.R. § 541.602(b)(2).  "Deductions for absences of less than a day are inconsistent with salary status." *Mezger v. Price CPAs, PLLC*, 2008 WL 2857007, at *3  (M.D. Tenn. July 21, 2008) (*quoting Mich. Ass'n of Gov't Employees v. Mich. Dep't of Corr.*, 992 F.2d 82, 84 (6th Cir.1993) (*citing Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir.1983); *Guerrero v. J.W. Hutton, Inc.*, 458 F.3d 830, 836 (8th Cir.2006) (stating that the salary basis provision prohibits deductions from an employee's salary for

personal absences of less than a day); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 265 (5th Cir.2000) (same); *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 534 (7th Cir.1999) (same); *Mich. Supervisors' Office & Prof'l Employees v. Mich. Dep't of Corr.*, No. 94-1203, 1995 WL 418069, at *8 (6th Cir. July 13, 1995) (same)).

In *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618 (6th Cir. 2009), the Sixth Circuit recognized that the *Auer* salary basis test was amended by the Secretary of Labor's regulations 29 C.F.R. § 541.603, effective August 23, 2004. *See Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 454 n. 5 (WDNY 2010) (*citing Baden-Winterwood,* 566 F.3d at 629.).

In adopting the new regulations for the salary basis test the Secretary of Labor reviewed the historical support for the test and explained that as far back as 1940 the Department recognized that "in order to avoid disputes, to assist in the effective enforcement of the act and to prevent abuse, it appears essential . . . to include a salary test in the definition of [the exemption]. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22176 (April 23, 2004) (citations omitted). Also from the 1940 report that "a salary criterion constitutes the best and most easily applied test of the employer's good faith in claiming that the person whose exemption is desired is actually of such importance to the firm that he is properly describabale as an employee employed in a bona fide administrative capacity." *Id.* The Department determined over the course of many years that the practice of paying executives, administrators and professionals on a salary basis reflects a widely-held understanding that employees with the requisite status to be bona fide executives, administrators or professionals have discretion to manage their time. *Id.* at 22177. Although employers are permitted to take deductions from salary for workplace conduct, the term does not refer to performance or attendance issues. *Id.* The exception for deductions related to conduct

4

should be construed narrowly so as not to undermine the essential guarantees of the salary basis test. *Id.*

Finally, the Department confirmed its long-standing opinion that partial day deductions are improper: "[w]e believe that partial day deductions generally are inconsistent with the salary basis requirement, and should continue to be permitted only for infractions of safety rules of major significance, for leave under the Family Medical Leave Act, or in the first and last weeks of employment." *Id.* at 22178.

The Sixth Circuit's approach to partial day deductions is consistent with the Department's opinion. Actual deductions from an employee's paycheck as a result of partial-day absences makes an employee ineligible for the exemption. *Mezger*, 2008 WL 2857007, at *3 (*quoting Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 516 (6th Cir. 2004)). However, employers are not without recourse. Employers may account for partial-day absences of salaried employees by requiring the employee to work extra hours or take vacation time or paid time off. *Id.* Delta Metals actual practice of paying Mr. Macklin and its other Foremen a straight rate for all hours worked in increments of one-quarter hours, regardless of whether that total hours fell above or below the stated "salary" can only be viewed as an intent on the part of Delta Metals to actually compensate its Foremen on an hourly basis rather than a salary basis.

> **B.     The Effect of Defendant's Violation is Loss of the Exemption During the Full Three-Year Statute of Limitations**

The amended regulations provide, in part, new guidance regarding the effect of improper deductions from salary, in that:

> (a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. The factors to consider when determining whether an employer has an actual

> practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.
> (b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. . . .

29 C.F.R. § 541.602.

The Sixth Circuit had the occasion to review the revised regulation regarding the effect of improper deductions from salary in *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618 (6th Cir. 2009). In *Baden-Winterwood*, a group of 26 plaintiffs who were department heads from different departments of the employer claimed their compensation plans violated the salary-basis test because their base salary was subject to reductions for recovery of unearned bonus overpayments that they had received earlier in the year. *Id.* at 621-22, 624. The district court determined that "the deductions from the salaries of eight Plaintiffs were deductions resulting from 'variations in the quality or quantity of the work performed,' in violation of the salary-basis test" and limited Plaintiffs' recovery to overtime pay for the three consecutive, bi-monthly pay periods during which the employer took actual deductions. *See id.* at 625. The Sixth Circuit affirmed, explaining that the effect of the post-August 23, 2004 regulations explain that the exemption is lost *during the time period* in which the improper deductions were made . . ." *Id.* at 634. It held that "the district court properly determined that only Plaintiffs who worked in the appropriate job classification during the relevant deduction period were entitled to overtime compensation under § 541.603. after August 23, 2004. *Id.*

The *Baden-Winterwood* court did not hold that the "time period" in § 541.603 is the same thing as a *pay period*. It merely affirmed the district court's decision that Plaintiff's recovery was properly limited to the pay periods in November and December of 2005 based upon the district court's finding of three distinct, improper deductions during those pay periods. Id. at 625-6, 634. Rather, the Sixth Circuit followed § 541.603 and determined that the exemption was lost *during the time period* in which the improper deductions were made. *Id.* at 634 (emphasis in original). This Court should follow the reasoning of *Baden-Winterwood*, and apply it to the facts presented in this case and hold that the exemption is lost during the entire time period of Plaintiff's employment for which he can recover damages under the statute. Any other holding frustrates the purpose of the salary basis test.

In *Baden-Winterwood*, improper deductions were taken on only three distinct dates in November and December of 2005. *Id.* at 625. In the case at bar Defendant presented evidence that 25 deductions had been taken from Plaintiff's pay. This court should follow the direction of the Sixth Circuit and apply the regulations of § 541.603(b) as intended by the Secretary.

In explanation of Section 541.603 the Secretary explained as follows:

> The final rule makes a number of substantive changes to the proposed section 541.603. We have modified the first two sentences of subsection (a) **to better clarify that the effect of improper deductions depends upon whether the facts demonstrate that the employer intended to pay employees on a salary basis**, and to substitute the phrase "actual practice" of making improper deductions for the "pattern and practice" language in proposed subsection (a).
>
> . . . Proposed subsection 541.603(a) contained the general rule regarding the effect of improper deductions from salary on the exempt status of employees: "An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer has a pattern and practice of not paying employees on a salary basis." Many commenters . . . express concern that the phrase "pattern and practice of not paying employees on a salary basis" in proposed subsection 541.603(a) was ambiguous and would engender litigation and perhaps result in unintended consequences. **The final rule clarifies that the central inquiry to determine whether an employer who makes improper**

7

**deductions will lose the exemption is whether "the facts demonstrate that the employer did not intend to pay employees on a salary basis."** The final subsection (a) replaces the proposed "pattern and practice" language with the phrase "actual practice," and also states that **an "actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis**." The phrase "pattern and practice" is a legal term of art in other employment law contexts which we had no intent to incorporate into these regulations. These changes should provide better guidance to the regulated community.

Most commenters support the listed factors in subsection (a) **for determining when an employer has an actual practice of making improper deductions.** Responding to comments submitted by the Fisher & Phillips law firm and the National Association of Convenience Stores, **the final rule states that the number of improper deductions should be considered "particularly as compared to the number of employee infractions warranting discipline**." The Second Circuit in Yourman v. Giuliani, 229 F.3d 124, 130 (2nd Cir. 2000), cert. denied, 532 U.S. 923 (2001), provided the following useful comparison: an employer that regularly docks the pay of managers who come to work five hours late has more of an "actual practice" of improper deduction than does an employer that only sporadically docks the pay of managers who come to work five minutes late, even though the penalties imposed by this second employer could far outnumber the penalties imposed by the first. Thus, **it is the ratio of deductions to infractions that is most informative, rather than simply the number of deductions**, because the total number of deductions is significantly influenced by the size of the employer. In light of this change, we have also deleted the size of the employer as a relevant factor in final subsection (a), as we did not intend that this section be applied differently depending on the size of the employer, and have deleted "whether the employer *22180 has corrected the improper pay deductions" as a relevant factor in determining whether an employer has an actual practice of improper pay deductions . . .

. . . Final subsection 541.603(b), as in the proposal, addresses which employees will lose the exemption, and for what time period, if an employer has an actual practice of making improper deductions. The proposal provided that the exemption would be lost "during the time period in which improper deductions were made for employees in the same job classification working for the same managers responsible for the improper deductions." The comments express strongly contrasting views on whether proposed section 541.603(b) should be retained or modified either to mitigate the impact on employers or to expand the circumstances in which employees would lose their exempt status. Commenters . . . support the proposal as resolving many of the misunderstandings that exist under the existing regulations and current case law. Other commenters, however . . . suggest that improper deductions should affect only the exempt status of the individual employees actually subjected to the impermissible pay deductions. . . .

**After giving this complex issue careful consideration, the Department has decided to retain in final subsection 541.603(b) the proposed approach that an employer who has an actual practice of making improper deductions will lose the exemption during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions.** The final regulation also retains the language that employees in different job classifications or who work for different managers do not lose their status as exempt employees. Any other approach, on the one hand, would provide a windfall to employees who have not even arguably been harmed by a "policy" that a manager has never applied and may never intend to apply, but on the other hand, would fail to recognize that some employees may reasonably believe that they would be subject to the same types of impermissible deductions made from the pay of similarly situated employees.

. . . The final rule represents a departure from the Department's position in Auer v. Robbins, 519 U.S. 452 (1997).

. . . **We are concerned with those employees who actually suffer harm as a result of salary basis violations and want to ensure that those employees receive sufficient back pay awards and other appropriate relief. We disagree, however, with those comments arguing that only employees who suffered an actual deduction should lose their exempt status.** An exempt employee who has not suffered an actual deduction nonetheless may be harmed by an employer docking the pay of a similarly situated co-worker. **An exempt employee in the same job classification working for the same manager responsible for making improper deductions, for example, may choose not to leave work early for a parent-teacher conference for fear that her pay will be reduced, and thus is also suffering harm as a result of the manager's improper practices. Because exempt employees in the same job classification working for the same managers responsible for the actual improper deductions may reasonably believe that their salary will also be docked, such employees have also suffered harm and therefore should also lose their exempt status.** The Department's construction best furthers the purposes of the section 13(a)(1) exemptions **because it realistically assesses whether an employer intends to pay employees on a salary basis.** For the same reasons, final subsection (a) provides that "whether the employer has a clearly communicated policy permitting or prohibiting improper deductions" is one factor to consider when determining whether the employer has an actual practice of not paying employees on a salary basis.

A number of commenters, such as the FLSA Reform Coalition, the U.S. Chamber of Commerce and the National *22181 Employment Lawyers Association, ask the Department to clarify how section 541.603(b) would apply if deductions result from a corporate-wide policy or the advice a manager receives from the human resources department. **We believe that final section 541.603**

9

> **calls for a case-by-case factual inquiry.** Thus, for example, under final subsection 541.603(a), a corporate-wide policy permitting improper deductions is some evidence that an employer has an actual practice of not paying employees on a salary basis, but not sufficient evidence by itself to cause the exemption to be lost if a manager has never used that policy to make any actual deductions from the pay of other employees. Moreover, in such a circumstance, the existence of a clearly communicated policy prohibiting such improper deductions would weigh against the conclusion that an actual practice exists.
>
> . . . Finally, a number of commenters, such as the Food Marketing Institute, ask the Department to clarify the burdens of proof. We do not intend to modify the burdens that courts currently apply. See Schaefer v. Indiana Michigan Power Co., 358 F.3d 394 (6th Cir. 2004) (employer has the burden to show employee was paid on a salary basis); Yourman v. Giuliani, 229 F.3d 124 (2nd Cir. 2000) (employee has the burden to show actual practice of impermissible deductions), cert. denied, 532 U.S. 923 (2001).

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 FR 22122, 22179-22182 (April 23, 2004)

The Secretary clearly contemplates that this Court's primary obligation in determining whether an employer who makes improper deductions will lose the exemption is whether "the facts demonstrate that the employer did not intend to pay employees on a salary basis." *Id.* at 22179. Each determination of the effect of improper deductions must be made on a case-by-case basis of the specific facts presented. *Id.* at 22181. The facts presented at trial dictate that Delta Metals had no intention of paying Mr. Macklin and its other Foreman a salary. The testimony of the company president juxtaposed with the testimony of its Human Resources Manager precludes such a finding.

The Secretary explains that "the ratio of deductions to infractions that is most informative, rather than simply the number of deductions." Here, Mr. Macklin's salary was deducted with each unexcused absence. Although there is no penalty for overpayment, the Defendant's practice of paying straight pay for all hours worked over 40 only reinforces the determination that the employer had no real intention of paying its Foremen as salary.

The Secretary explains that it's construction of the salary basis test and the effect of its violation best furthers the purposes of the section 13(a)(1) exemptions because it realistically assesses whether an employer intends to pay employees on a salary basis. *Id.* at 22180. Where the facts demonstrate that the employer did not intend to pay employees on a salary basis, employees who actually suffer harm as a result of salary basis violations should receive sufficient back pay awards and other appropriate relief. *See id.* at 22179-80.

Section 541.603 was not intended by the Secretary merely to limit an employee's recovery of back wages to only those pay periods during when improper deductions were taken in every case. If this was so, the Secretary's concern for the employee who may choose not to go to an parent-teacher conference for fear of suffering a pay reduction and the resulting harm suffered by this employee would make no sense. *See id.* at 22180. This is because in a case like Mr. Macklin's if he suffered a deduction in his pay the two weeks before the parent-teacher conference, and he altered his conduct so as to avoid a reduction in pay the following week, missing the parent-teacher, suffering harm as contemplated by the Secretary, if he could only recover for his two weeks prior to the conference and not for his harm suffered for missing the parent-teacher conference. This backward result cannot be fairly contemplated by the regulations when taken as a whole.

This court should follow the holding of the Sixth Circuit in *Baden-Winterwood*, and apply Section 541.603 as intended by the Secretary and hold that Defendant did not intend to treat Mr. Macklin as a salaried employee for any of the time that Mr. Macklin worked for Defendant as a foreman.

### III.     Liquidated Damages

The FLSA provides that "[a]ny employer who violates… [29 U.S.C. §207] ***shall*** be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, ***and in an additional amount as liquidated damages.*** 29 U.S.C. §216(b). (emphasis added).  Liquidated damages "are compensation, not a penalty or punishment," *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 840 (6th Cir.2002) (internal quotations omitted). Liquidated damages are "the norm" and have even been referred to by the Sixth Circuit as "mandatory." *Martin v. Ind. Mich. Power Co*., 381 F.3d 574, 585 (6th Cir. 2004).

A district court has discretion to not award liquidated damages if the employer shows that it acted in good faith and with reasonable grounds for believing that its act or omission was not a violation of the Fair Labor Standards Act.  29 U.S.C. § 260; *see also Elwell*, 276 F.3d at 840. However, "[i]n the absence of such proof ... a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Id.* (quoting *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir.1971)).

The burden of establishing good faith for an employer is "substantial," *Elwell*, 276 F.3d at 836, and a failure to comply with provisions of the Act must be based on objectively reasonable grounds. *See Martin,* 381 F.3d at 584.  Accordingly, demonstrating good faith requires more than the absence of intent or knowledge. *See* Reich v. Southern New Eng. Telcoms. Corp., 121 F.3d 58, 71 (2d Cir.1997).  Instead, to establish requisite subjective "good faith" to avoid award of liquidated damages upon finding of actual damages under the FLSA's overtime provision, employer must show that it took active steps to ascertain dictates of FLSA

12

and then to comply with them. *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132 (2d Cir. 2008).

Plaintiff submits that Defendant cannot establish objective or subjective good faith here. Although Defendant attempted to establish through its Human Resources Manager that it had taken active steps to educate itself about the FLSA in an attempt to comply with it, Defendant's failure to make any attempt whatsoever to investigate whether it paid its Foreman in compliance with the salary basis test where its own HR Manager knew in 2005 that partial day deductions were a violation of the salary basis test, cannot said to be objective or subjective good faith. Consequently, Plaintiff is entitled to liquidated damages in an amount equal to his damages for unpaid overtime.

**IV.     Plaintiff's Claim is Governed by the Three-Year Statute of Limitations because Defendant's Violation of the FLSA was Willful.**

Congress enacted a two-tiered statute of limitations under the FLSA; specifically, plaintiffs generally must commence actions to enforce the FLSA within a two-year limitations period. If, however, the plaintiffs succeed in establishing that an employer's violations of the FLSA were willful, the limitations period is extended to three years. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 131-32 (1988).

To prove a particular FLSA violation willful under § 255, the Supreme Court has, in general, required evidence of an employer's "kn[owing] or [ ] reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin ,* 486 U.S. at 133, 108 S.Ct. 1677 (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125-30, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). Where, as here, an employer shows "evident indifference" to the FLSA's requirements, a finding of willfulness is warranted. *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1296 (3d Cir.1991). For the three-year statute of limitations to apply for a willful violation, an

13

employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very possibility that it was violating the statute. *See Alvarez v. IBP, Inc.,* 339 F.3d 894, 991 (9th Cir. 2003); *see also Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132, 141 (2d Cir. 1999).

Incorrectly categorizing Plaintiff as an exempt employee and failing to pay Plaintiff overtime is willful where an employer knew or should have known that there was no real difference between tasks performed by the hourly maintenance technicians and the duties of Plaintiff. *Greene v. Westwood Property Management, LLC*, 2009 WL 1362271, at *14-16 (M.D. Tenn. May 12, 2009) (where Plaintiff was simply a general laborer and Defendants knew or should have known that he was required to be paid an hourly rate) (*citing Allen v. Bd. of Educ. for Bibb Cty.,* 495 F.3d 1306, 1324 (11th Cir. 2007) ("[t]he three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA; rather it may apply when it simply disregarded the possibility that it might be violating the FLSA").

An examination of the record here verifies that Defendant was on notice of its FLSA requirements since at least 2005, yet it took no affirmative action to come into compliance with the FLSA. Here, Mr. Moranville's readily admitted that he was aware of the salary basis test and he further knew that partial day deductions defeated the salary basis test. Mr. Moranville further testified that although he was aware that Defendant's Foremen received straight pay for all hours worked over 40 any given workweek, he still failed, as the decision maker, to look at any pay records or investigate how the Foremen were actually paid. It appears he just took at face value the representations of others related to the pay of the Foremen. Mr. Moranville's failure, over the course of approximately five years to ever investigate the actual pay practices of Defendant is at best reckless. Upon his inspection of the Foremen's personnel folders, he would have

discovered not one single reference to salary compensation. Further, it appears Mr. Moranville knew that the pay of the Foreman was expressed in the company records as hourly pay for purposes of reporting to OSHA. It can be inferred from this explanation that either Mr. Moranville or the company's management felt the need to provide some explanation as to why all of the company's personnel records reflected pay structures in hourly rates. Under the circumstances presented in the case at bar, in light of all of the clues pointing to the fact that the Defendant's Foreman were not truly paid on a salary basis, it was especially reckless for Mr. Moranville not to perform a short straightforward investigation of Defendant's pay practices. His failure to do so constitutes a willful violation of the Act.

There is no question that Defendant's violations were willful. In light of Mr. Moranville's knowledge of the salary basis test, his knowledge of Defendant's practice of paying Foreman for straight time for all hours worked over 40, his knowledge that Defendant's personnel records for Foreman only reflected hourly pay, it seems unrealistic to suggest that it was anything less than reckless for him to further investigate the pay practices of the Defendant. The only reasonable explanation for him not doing so would seem to be that the Defendant's management specifically saw to it that he didn't investigate it. Defendant's decision to keep its head in the sand regarding its FLSA obligations must be deemed willful. Because this type of indifference is exactly the type of conduct envisioned by the Supreme Court that gives support to a finding of willfulness, the extended three (3) year statute of limitations should be deemed applicable here.

## V. **Conclusion.**

Defendant has not met its substantial and necessary burden of proof to establish the narrow interpretation of the salary basis test. It is so clear that Plaintiff's compensation was reduced based upon the quantity of the work performed, that the other tests are of little consequence in

15

this case.  To prove Defendant properly classified Plaintiff as an exempt employee under the claimed exemption, Defendant must establish through clear and affirmative evidence that Plaintiff was paid a guaranteed salary that was not subject to reduction for improper reasons. Similarly, Defendant has not met is significant burden to avoid the imposition of liquidated damages.  Lastly, because Defendant's FLSA violations can only be described as willful, the instant claim is subject to a three year statute of limitations period.

Thus, for all the aforementioned reasons, the Court should enter an Order finding: (1) Plaintiff is entitled to $1,041.15 in unpaid overtime wages; (2) an equal amount of $1,041.15 in liquidated damages; and (3) that a 3 year statute of limitations is applicable to this case.

Respectfully Submitted,

MORGAN & MORGAN, PA

 s/ Jennifer M. Bermel
JENNIFER M. BERMEL #21392
One Commerce Square, Ste. 2600
Memphis, Tennessee 38103
Phone: 901-333-1827
Fax: 901-333-1864
jbermel@forthepeople.com

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I, Jennifer M. Bermel, hereby certify that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to all counsel of record.

THIS, the 27th day of September, 2010.

 s/ Jennifer M. Bermel
JENNIFER M. BERMEL