IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

___

JAMES E. MACKLIN,

    Plaintiff,

v.                                                      Cause No.:  2:08-cv-02667

DELTA METALS COMPANY, INC., a Tennessee Corporation,

    Defendant.

___

PLAINTIFF'S REPLY TO DEFENDANT'S POST-TRIAL BRIEF
___

Plaintiff has been confused by Defendant's unwavering confidence that it would prevail in this case.  However, Defendant's Post-Trial Brief explains volumes.  Defendant states, in error, that "It is only if the Court finds that the salary basis test *and* the other 3-prongs of 29 C.F.R. 541.100 have not been met that Mr. Macklin would be entitled to damages."  Delta Metals Post-Trial Brief (hereinafter "Delta's Brief"), Doc. No. 47, p. 11.  Of course, this is not an accurate representation of the Plaintiff's burden with respect to the executive exemption.

29 C.F.R. § 541.100 provides the general rule for establishing whether an employee is a genuine executive employee eligible for the executive exemption from the requirements of the FLSA.  The "three other prongs" of Section 541.100 referenced by Defendant are:

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement,

1

promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100. However, to prevail on his case Plaintiff need not prove all of the elements of Section 541.100. To the contrary, Defendant bears the burden of proof on its affirmative defense and must prove each and every element of Defendant's claimed exemption. *Douglas v. Argo-Tech Corp.,* 113 F.3d 67, 70 (6th Cir. 1997). In order to carry its heavy burden Defendant must prove the salary basis and the other 3 prongs. The exemption is narrowly construed to the benefit of Plaintiff and in the event this Court finds that Defendant failed to carry its burden as to any *one* of the elements, Plaintiff prevails. This is a very significant difference and explains Defendant's misplaced faith in its position in this litigation.

    **1.**     **Salary Basis**

Delta does not carry its burden that it intended to pay Mr. Macklin on a salary basis just because it says so and it believed as much. In support of its argument that it compensated Mr. Macklin on a salary basis, Defendant essentially suggests as follows:

- a) Mr. Aghabeg, President of Delta Metals, said Mr. Macklin was paid a salary. (Delta's Brief, p. 2).
- b) Trial Exhibit 5 shows Macklin was paid a salary. (Delta's Brief, p. 2, 6).
- c) Mr. Moranville, Delta Metal's Personnel Manager, "*understood*" Macklin and all Foremen were paid a salary. (Delta's Brief, p. 2).
- d) Delta Metal's partial day deductions do not effect his salary basis, in reliance upon *Acs v. Detroit Edison Co.*, 444 F.3d 763 (6th Cir. 2006). (Delta's Brief, p. 2-5).

This is not sufficient to carry defendant's burden.  Delta Metals cannot establish that Macklin was paid a salary just because the President of the company said so.  Further, it is of no effect that the personnel manager *thought* the Foremen received a salary, especially in light of his testimony that he made no investigation to determine how they were actually paid.

All of Delta's records indicate Macklin was paid hourly.  Trial Exhibit 5 was created specifically for this lawsuit; it does not lend credence to Defendant's witnesses.  Trial Exhibit 5 is merely a time line created for the purposes of trial; it does not lend persuasive authority to Defendant's argument.  Although Mr. Aghabeg did testify Macklin was paid a guaranteed salary, he also admitted that Macklin frequently didn't actually receive his minimum salary.  Mr. Aghabeg was keenly aware of the difference between his salary and the salary of his Foremen.  He clearly understood his salary wasn't tied to the number of hours he worked.  More or less time worked – it didn't matter, he earned the same pay.  Further, Mr. Aghabeg's testimony demonstrated that he understood the Foreman's salary was directly tied to the number of hours they worked.

In addition, Mr. Aghabeg's representations regarding the business reasons, convenience and regulatory reasons for "computing" the Foremen's salary based on an hourly rate would be credible if the Foremen actually received the "computed" salaried amount, but the evidence presented established that they did not.  If they had any unexcused absence that caused their hours to fall below 40, they received less than their "guaranteed salary."  This is no real salary and Mr. Aghabeg demonstrated that he knew the difference.

Delta Metals asserts that paying its Foremen straight time for all of their hours worked over 40 and computing salaries based upon hourly rates does not defeat the salary basis.  Plaintiff readily admits that the exemption is not lost due to these practices; however, both practices offer

no support towards Defendant's burden. Although a salary can be computed based upon an hourly rate there needs to be evidence that it actually was computed. Trial Exhibit 5 and less than credible, self-serving conclusory statements was the only evidence Defendant presented to suggest it actually "computed" Plaintiff's hourly rate into a salary.

### 2. Partial Day Deductions

*Acs v. Detroit Edison Co.*, 444 F.3d 763 (6th Cir. 2006) is not analogous to the case at bar. In *Acs*, Detroit Edison had a written policy that explained that all salaried employees had to *report* at least 40 hours each week. *Id.* at 765. At Detroit Edison, every single salaried employee from the CEO on down had to report the number of hours they worked each week for regulatory reasons and therefore had annual salaries that were converted to weekly salaries and then converted to hourly rates based upon a 40 hour work week. *Id.* The salaried employees were instructed to report 40 hours even if they worked less, in certain circumstances. *Id.* at 765-66. In addition to written policies, the company also instituted safe-guards to help ensure that its salaried employees properly reported their hours. *Id.* at 766. Further, Detroit Edison had a formal policy through which employees could report and seek correction of any oversights in the reporting of their hours. *Id.* at 766.

Delta Metals is no Detroit Edison. Delta Metals had no policy in place similar to Detroit Edison to ensure that its' employees properly reported 40 hours. Delta Metals had no policy in place instructing employees to report 40 hours when they only worked 36. Delta Metals' practice – as a convenience to bookkeeping, that employees could only take vacation in increments of 4 hours or full days – is specifically contrary to the salary basis test. Detroit Edison's policies were generated in an effort to comply with the salary basis test. This is why the Sixth Circuit affirmed the district court's decision that 40 occasions effecting only 29 out of

4

383 employees receiving less than their full salary over the course of six and a half years did not undermine an employer's effort to show that it intended to pay its exempt employees a genuine guaranteed salary. *See id.* at 770-71. Defendant's representations to this Court that the partial day deductions in this case are merely human error "like those occurring in *Acs*" (Delta's Brief, p. 5) is misleading. This case is not similar to *Acs* in any respect. There has to be *error* before human error exists. Defendant failed to present evidence in support of its assertion that the payroll clerk was actually doing anything in error. To the contrary, Plaintiff respectfully submits that the reasoning and holding of *Acs* dictate that Defendant did violate the salary basis test in this matter.

### 3. Damages

Delta Metals represented in its Pretrial Memorandum:

C. Damages
1. Compensatory Damages
i. Two Year Period
Assuming that Defendant is found to have violated the FLSA (which Defendant denies) and that the Court finds that the two year statute of limitations period is applicable, **Plaintiff would be owed $300.15.*** *See* Exhibit A attached hereto.
ii. Three-Year Period
Assuming that Defendant is found to have violated the FLSA (which Defendant denies) and that the Court finds that the three year statute of limitations period is applicable, **Plaintiff would be owed $1,04.15.*** *See* Exhibit B attached hereto.

Defendant's Pretrial Memorandum *as amended, (Doc. No. 40, p.14). Prior to the beginning of trial, Plaintiff explained to this Court that Defendant refused to stipulate to the number of hours worked by Plaintiff each week and the amount of pay received by Plaintiff each week according to the Defendant's own records. Plaintiff further explained that although Plaintiff didn't specifically agree with the method of Defendant's calculations used to reach its damages' calculations, the end result of substantially similar to the figures Plaintiff would have presented. For these reasons, Plaintiff stipulated to Defendant's proposed damages calculations. This Court

5

accepted the stipulation that if Defendant violated the FLSA and the two-year statute is applicable, Plaintiff is owed $300.15 in back wages, or $1,041.15 under the three-year statute of limitations.  Plaintiff detrimentally relied upon the stipulation in presenting his case at trial.

"[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (*quoting Ferguson v. Neighborhood Housing Services,* 780 F.2d 549, 551 (6th Cir.1986) (citations omitted). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Id.* (*quoting In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr.E.D.Mich.1982)). "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Id. (citing White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983)).  Thus any arguments presented by Defendants contrary to the stipulation of the parties should be disregarded by this court.

Because Plaintiff established that Defendant had an actual practice of repeated, improper deductions that were not inadvertent or clerical errors the exemption is lost and Plaintiff is entitled to the full damages as stipulated upon by the parties.

### 4. Liquidated Damages/Willfulness

Defendant cannot rely upon the knowledge of Mr. Moranville, or his inspection of the Foremen's personnel files to establish a good faith basis to comply.  Mr. Moranville testified that his department and payroll were separate and that he did not inspect the pay practices of Defendant.

Consistent with Defendant's suggestion, "Mr. Moranville testified that he did not believe partial-day deductions were being made from exempt employee's checks."  (Delta's Brief, p. 11).   But, Mr. Moranville admitted on cross-examination that partial day deductions did not comply with the salary basis test.  Defendant relies upon Mr. Moranville's knowledge, his investigation, and his "understanding" that the Foremen were paid a salary in an attempt to establish that it acted in good faith.  However, even if everyone at Delta Metals "believed" the Foremen were being paid on a salary basis, this does not establish good faith.  Good faith requires more than the absence of intent or knowledge.  *See* Reich v. Southern New Eng. Telcoms. Corp., 121 F.3d 58, 71 (2d Cir.1997).

Although Defendant seeks to rely upon Mr. Moranville in an attempt to establish that is took affirmative steps to responsibly comply with the FLSA, Mr. Moranville's testimony tend to suggest that Delta Metals violation of the Act was at least reckless, if not willful.  Defendant maintains that "Mr. Moranville testified that he reviewed employee time cards, added up the number of hours on each time card and sent those time cards to the payroll clerk so that salaried employees who worked over 40 hours would get paid for any additional time they had worked during the pay period.[1]"  (Delta's Brief, p. 5).  Upon his review of the time cards, Mr. Moranville should have recognized that Plaintiff's time reported, on occasion, was less than 40 hours per week.  Mr. Moranville should have known based upon his review of Plaintiff's personnel folder that all of Plaintiff's compensation was expressed in terms of hourly service.  Mr. Moranville further indicated that he knew Defendant paid the Foremen by the hour for all hours over 40.  In light of all of the inconsistencies regarding Defendant's pay structure to Plaintiff, Mr. Moranville

---

[1] Plaintiff does not recollect Mr. Moranville testifying as represented here by Defendant; however, Plaintiff was only represented by one attorney at trial who was not able to create her own complete record of the testimony and the parties' are submitting briefing without the benefit of a written record.  Plaintiff assumes Defendant is accurately representing Mr. Moranville's testimony at trial.

should have recognized that to confirm that Plaintiff and the other Foremen were actually being paid on a true salary basis in compliance with the FLSA, he should have looked to see if Plaintiff and the other Foremen received their full salary pay on occasions were he noticed that they were reporting less than 40 hours.  It was reckless to have not done so.

Further, to believe that Defendant acted in good faith, this Court would have to accept that *both* Mr. Moranville and Mr. Aghabeg were not aware that Plaintiff and the other Foremen were not permitted to take vacation or take personal time to make up unexcused absences. Defendant cannot expect this Court to believe that Defendant had a stated policy and practice that Foremen could take paid sick leave as long as they had a doctor's excuse – which by implication necessarily means that paid sick leave was not available to them if they did not have a doctor's note – but yet were not aware that Plaintiff's pay and the pay of the other Foreman would not be reduced as a result of such an unexcused absence. Under the terms of Defendant's own policy, this reduction would result before the employees sick leave was exhausted because the Foremen had unlimited sick leave.

Accordingly, instead of establishing the requisite subjective "good faith" to avoid an award of liquidated damages the testimony of Mr. Moranville and Mr. Aghabeg together shows a "kn[owing] or [ ] reckless disregard" as to whether Defendant's pay practices were prohibited by the FLSA. *McLaughlin* , 486 U.S. at 133, 108 S.Ct. 1677 (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125-30, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).  "Evident indifference" to the FLSA's requirements constitutes a finding of willfulness and provides for the recovery under the three-year statute of limitations. *See Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1296 (3d Cir.1991).

Thus, for all the aforementioned reasons, the Court should enter an Order finding: (1) Plaintiff is entitled to $1,041.15 in unpaid overtime wages; (2) an equal amount of $1,041.15 in liquidated damages; and (3) that a 3 year statute of limitations is applicable to this case.

>Respectfully Submitted,
>
>MORGAN & MORGAN, PA
>
> s/ Jennifer M. Bermel
>JENNIFER M. BERMEL #21392
>One Commerce Square, Ste. 2600
>Memphis, Tennessee 38103
>Phone: 901-333-1827
>Fax: 901-333-1864
>jbermel@forthepeople.com
>
>ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I, Jennifer M. Bermel, hereby certify that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to all counsel of record.

THIS, the 1st day of October, 2010.

> s/ Jennifer M. Bermel
>JENNIFER M. BERMEL