# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

_____

JAMES E. MACKLIN, on behalf of    )
himself and others similarly,     )
situated                         )
                                )
    Plaintiffs,            )
                                )
v.                           )   No.:  2:08-cv-02667
                                )
DELTA METALS COMPANY, INC.,     )
a Tennessee Corporation,        )
                                )
    Defendant.             )

_____

### OPINION AND ORDER FOLLOWING NON-JURY TRIAL
_____


      Plaintiff James Macklin brings this suit under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. (the "FLSA"), alleging that Defendant Delta Metals Company, Inc. ("Delta Metals") failed to pay him overtime, at a rate of time-and-a-half, during his employment as Foreman during the period from October 8, 2005 to October 7, 2008. (Compl. ¶ 7; Trial Ex. 1, 2.)  The Court held a bench trial in this case on Monday, September 20, 2010.  Plaintiff was represented by Jennifer M. Bermel, Esq., from the law firm of Morgan & Morgan, PA, and Tiffany G. Johnson, Esq., from the law firm of QP Legal. Defendant was represented by Shea Sisk Wellford, Esq., and Earl W. Houston, II, Esq., from the law firm of Martin, Tate

Morrow & Marston.  The Plaintiff James Macklin only called himself as a witness at trial.  The Defendant called the following three witnesses at trial: Darren Aghabeg, President of Delta Metals; Fred Harvey, Production Manager for Delta Metals; and James Moranville, Personnel Manager for Delta Metals.

For the reasons set forth in this opinion, the Court finds that Plaintiff was not an exempt employee under 29 U.S.C. § 213(a) and thus is entitled to damages for unpaid overtime plus liquidated damages.

## I. Findings of Fact

Defendant Delta Metals, a steel service center with facilities located in Memphis, Tennessee, employed Plaintiff from November 1998 to June 2007.  (Trial Ex. 5; James Macklin Trial Test. ("Macklin Test."); D.E. 43, Second Am. Joint Pretrial Order, Stipulated Facts ("Pretrial Order Stipulated Facts") 4.)  Plaintiff began working for Defendant as an hourly wage laborer in 1998 on its 72 inch slitter steel production line[1] ("72 inch slitter"), which slits coils of steel 72 inches wide.  (Trial Ex. 5; Darren Aghabeg Trial Test. ("Aghabeg Test."); D.E. 43.)  Plaintiff worked as a material handler, bander, and machine operator during this

---

[1] Defendant also trained Plaintiff how to operate the 60 inch slitter production line.  (Aghabeg Test.)

time, and Plaintiff received time-and-a-half for each hour
worked in excess of a forty-hour work week.  (Trial Ex. 5;
Macklin Test.)  Fred Harvey, who was foreman of the 72 inch
slitter at the time, trained Plaintiff to manage the
production line for the purpose of his advancement in Delta
Metals.   (Fred Harvey Trial Test. ("Harvey Test.").)
Defendant promoted Plaintiff to Junior Foreman on or around
February 8, 1999, and Defendant continued to pay Plaintiff on
an hourly basis, including overtime.  (Trial Ex. 5, 6, 19.)

     On February 5, 2001, Defendant promoted Plaintiff to
Foreman, where he supervised anywhere from three to ten
employees on the 60 inch slitter production line.[2]  (Pretrial
Order Stipulated Facts 5.)  Defendant initially paid
Plaintiff $480 per week, which increased to $606 per week by
February 20, 2005.[3]  (Trial Ex. 5, Aghabeg Test.)

     As Foreman Plaintiff had greater responsibility compared
to his prior employment as Junior Foreman.  (Macklin Test.;
Dep. of James Macklin on 12/2/2009 ("Macklin Dep.") 77:8.)
Plaintiff trained employees on how to run the production line

---

[2] Each slitter production line consists of three to ten line employees, a
Junior Foreman, and a Foreman.  (Pretrial Order Stipulated Facts 5.)
[3] Plaintiff's weekly salary increased from $480 to $520 on June 24, 2001,
to $540 on February 24, 2002, to $566 on March 2, 2003, to $586 on
February 22, 2004, and then to $606 on February 20, 2005.  (Trial Ex. 5,
Aghabeg Test.)  Defendant broke down Plaintiff's salary into hourly units
on several of its internal employee forms.  (See e.g., Trial Ex. 2, 3, 9,
10, 11, 12, 19.)  Darren Aghabeg, President of Delta Metals, testified
that internal company forms expressed Plaintiff's and its other employees'
pay in hourly terms to provide a common unit of measurement and more
easily track expenses (Aghabeg Test.)

and managed his own equipment, crew, and production schedule. (Pretrial Order Stipulated Facts 5; Macklin Test.; Aghabeg Test.; Harvey Test.) Plaintiff created daily production reports and was responsible for ensuring that production was met each day. (Id.) He wrote evaluations on his line recommending employees for hiring,[4] firing, promotion, demotion or discipline, approved all requests for use of vacation time by his line employees, and reviewed all complaints or grievances of the line employees and communicated them to senior management. (Pretrial Order Stipulated Facts 5-6; Macklin Test.; Aghabeg Test.; Harvey Test.) Delta Metals discouraged Foremen from performing the manual labor on the production line themselves. (Aghabeg Test.) While Plaintiff had the authority to terminate employees on his production line, he never did so. (Macklin Test.; Aghabeg Test.)

Plaintiff ran safety meetings for his production line and had his own office from which he could observe his production line. (Macklin Test.) The office had a desk and computer, which he used to run the CASS computer software to design the setups for each steel order. (Macklin Test.; Harvey Test.) Plaintiff also verified and signed his

---

[4] Mr. Aghabeg testified that Delta Metals generally followed Plaintiff's recommendations for hiring or promoting line employees. (Aghabeg Test.) Defendant hired Jeremiah Smith and LeRoy Oliver based on Plaintiff's recommendation. (James Moranville Trial Test. ("Moranville Test.").)

employees' time cards and turned them in every Monday to senior management. (Macklin Test.) Plaintiff testified that he viewed Foreman as a management position and took great pride in the title. (Id.)

As Foreman, Plaintiff would typically arrive at work at 4:45 a.m. and leave at 1:00 p.m. (Macklin Test.) He would arrive fifteen or thirty minutes before his crew to ensure the slitter was working properly, and stay fifteen minutes later than his crew. (Id.) Plaintiff as Foreman received several perks not shared by lower-paid employees: for example, he received a raise every year, higher bonuses than hourly workers, and unlimited paid sick leave so long as he provided a doctor's excuse. (Pretrial Order Stipulated Facts 5; Macklin Test.; Aghabeg Test.; Harvey Test.) He received two personal days of vacation that he could use for any purpose. (Aghabeg Test.) As Foreman, Plaintiff also received disability insurance and life insurance at the non-smoker rate. (Id.)

As Foreman, Plaintiff filled out time cards reflecting his hours worked per week. (Trial Ex. 16, 17, 18; Aghabag Test., Macklin Test.; Macklin Dep. 137-38.) Defendant classified Foreman as a salaried position (Aghabag Test.); however, many of Defendant's verification of employment forms classified Plaintiff's gross pay as hourly. (Trial Ex. 20,

21.) For all hours worked over forty in a week, Plaintiff received overtime at his regular pay rate. (Aghabag Test.; Macklin Test.) While Plaintiff as Foreman did not receive overtime at time-and-a-half of his regular pay rate, Plaintiff received a higher salary of $34,500 compared to the $26,800 salary for a Junior Foreman.[5] (Aghabag Test.)

Significantly, for the weeks that Plaintiff worked fewer than forty hours, Defendant would deduct Plaintiff's pay on an hourly basis for each hour worked less than forty. (Aghabag Test.; Macklin Test.) For weeks that Plaintiff worked fewer than forty hours, Defendant would allow him to use his personal compensatory time in four-hour increments to make up for the shortfall. (Aghabag Test.) Plaintiff could only use personal or vacation time for this purpose, since use of sick leave required a doctor's note. (Id.) Defendant did not have a written manual detailing its policies for making deductions from a Foreman's salary when he worked fewer than forty hours. (Id.)

The parties agree that Plaintiff worked in excess of forty hours per week for several weeks during his employment as a foreman between October 2005 and October 2008. (Trial Ex. 1, 2). During this period, Plaintiff produced evidence that Defendant made twenty-five partial-day deductions from

---

[5] Manual laborers on the production line earned anywhere between $16,500 and $20,000 in annual salary. (Aghabag Test.)

Plaintiff's salary. (Trial Ex. 13-18; Aghabeg Test.) For example, from October 24 to October 28, 2005, Plaintiff received only $603.91 for thirty-nine and three-quarters hours of work, rather than his "weekly salary" of $606. (Trial Ex. 13, 16; Aghabeg Test.) From February 6 to February 10, 2006, Plaintiff received only $596.31 for thirty-nine and one-quarter hours of work. (Trial Ex. 13, 17; Aghabeg Test.) While Mr. Aghabeg testified that Plaintiff received a guaranteed salary (Aghabeg Test.), the evidence shows that Plaintiff frequently received less pay than what Defendant claimed was his guaranteed salary.[6]

Mr. Moranville, head of Delta Metal's Personnel Office, maintained an absentee calendar from 2005 to 2007 that tracked tardiness and absences or partial-day absences.[7] He testified, however, that Defendant did not use the calendar for deduction purposes. (Trial Ex. 22; James Moranville Trial Test. ("Moranville Test."); Aghabeg Test.) The payroll clerk for Defendant made the deductions from Plaintiff's salary. (Id.) Mr. Moranville's responsibilities as personnel manager included reviewing employee time cards, adding up the number of hours on each time card and sending them to the payroll clerk so that salaried employees would be

---

[6] Defendant has never been subject to investigation by the Wage and Hour Division of the U.S. Department of Labor. (Aghabeg Test.)
[7] Defendant presented evidence that Plaintiff had twenty-two disciplinary incidents in the three years prior to the filing of the complaint. (Trial Ex. 22; Moranville Test.)

paid extra for hours worked in excess of forty hours in a given week. (Id.) Mr. Moranville attended a seminar covering how to classify exempt employees under the FLSA. (Moranville Test.) The evidence did not show, however, that Mr. Moranville had the responsibility to classify Delta Metal employees as exempt or not exempt or that he made the final decision that Plaintiff was a salaried employee. The Defendant provided no evidence that it had adopted company standards consistent with the FLSA that Defendant required its payroll clerk to follow when making deductions from Plaintiff's paycheck. (Aghabeg Test.; Moranville Test.)

Plaintiff complained to his supervisor, Fred Harvey, that the employees below him, including the Junior Foreman, would at times make more money in a given week because they received time-and-a-half for all hours worked over forty in a given week. (Macklin Test.; Harvey Test.) The company took no action to adjust Plaintiff's salary. (Id.) Plaintiff subsequently stopped arriving at work fifteen or thirty minutes early, and Fred Harvey did not report his later arrivals at work to senior management. (Id.)

On or around May 22, 2005, Defendant demoted Plaintiff from Foreman back to an operator on the production line as a result of his absences from work. (Trial Ex. 5.; Aghabeg Test.) During his evaluations of Plaintiff as a Foreman,

Fred Harvey criticized his management skills.  (Trial Ex. 10, 11, 12; Harvey Test.; Aghabeg Test.)  Specifically, the evaluations stated that Plaintiff both did not adequately train his men to work on the production line and spent too much time working on the line himself.  (<u>Id.</u>)  After the demotion, Plaintiff received his pay on an hourly basis, with time-and-a-half pay for overtime.  Plaintiff thereafter visited Fred Harvey's office several times seeking to be reinstated as Foreman.  (Harvey Test.)  On July 17, 2005, Defendant reinstated Plaintiff as a Foreman at a "weekly salary" of $606 per week.  (Trial Ex. 5.; Aghabeg Test.)  Defendant increased his salary to $626 per week on April 10, 2006, and then to $640 per week on April 15, 2007.  (<u>Id.</u>)  Defendant terminated Plaintiff on June 4, 2007 due to his absences from work.  (<u>Id.</u>)

## II. Conclusions of Law

The issues before the Court are as follows: (a) whether Plaintiff was an "exempt executive" not entitled to overtime wages under 29 U.S.C. § 213 of the FLSA;[8] (b) if Plaintiff was not an exempt executive, whether the two- or three-year statute of limitations applies to this case under 29 U.S.C. § 255(a); and (c) the amount of damages, liquidated damages,

---

[8] Defendant is an enterprise covered by the FLSA, as defined by 29 U.S.C. § 203(r) and 203(s).  (Pretrial Order Stipulated Facts 6.)

attorney's fees, and costs, if any, that the Court should
award Plaintiff.

**A. Exempt Executive**

The FLSA requires an employer to compensate its
employees "at a rate not less than one-half times the regular
rate" for each hour worked in excess of forty (40) hours
during a workweek.  29 U.S.C. § 207(a)(1).  The FLSA,
however, provides an exemption from the § 207 overtime
requirement for any employee employed in a bona fide
executive, administrative, or professional capacity.  29
U.S.C. § 213(a)(1).

Under the current regulations, a bona fide executive
means any employee:

(1) "Who is compensated on a salary basis at a rate of
not less than $455 per week, exclusive of board,
lodging, or other facilities;

(2) Whose primary duty is management of the enterprise
in which the employee is employed or of a
customarily recognized department or subdivision
thereof;

(3) Who customarily and regularly directs the work of
two or more employees; and

(4)  Who has the authority to hire or fire other

     employees or whose suggestions and recommendations

     as to the hiring, firing, advancement, promotion,

     or any other change of status of other employees

     are given particular weight."

29 C.F.R. §§ 541.100(a)(1)–(4); see also 29 C.F.R. §§ 541.102
(describing the characteristics of "management").  The
overtime exemption is an affirmative defense, and the
employer bears the burden of proving that the specific
employee fits within each element of the exemption.  Thomas
v. Speedway SuperAmerica, LLC, 506 F.3d 496, 501 (6th Cir.
2007).  The exemption is construed narrowly against the
employer seeking to assert it.  Id.; see also Acs v. Detroit
Edison Co., 444 F.3d 763, 767 (6th Cir. 2006) (quoting Ale v.
TVA, 269 F.3d 680, 691 n.4 (6th Cir. 2001) (noting that the
"defendant must establish through 'clear and affirmative
evidence' that the employee meets every requirement of an
exemption")); Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392
(1960); Douglas v. Argo-Tech Corp., 113 F.3d 67, 70 (6th Cir.
1997) (internal citations omitted).  The employer has the
burden of establishing each element by a preponderance of the
evidence.  See id. at 502 (citing Renfro v. Ind. Mich. Power
Co., 497 F.3d 573, 576 (6th Cir. 2007)).  Also, "[a]
determination of whether an employee has management as his

primary duty must be based on all the facts of the case."
Stein v. J. C. Penney Co., 557 F. Supp. 398, 403 (W.D. Tenn.
1983).

The evidence is undisputed that Plaintiff's salary as
Foreman exceeded $455 per week at any time between October
2005 and October 2008. (Trial Ex. 5). Similarly, it is
undisputed that Plaintiff directed the work of two or more
employees while serving as Foreman. (Macklin Test.; Aghabeg
Test.; Harvey Test.) The evidence also supports the
conclusion that Plaintiff while employed as Foreman had the
authority to recommend line employees for promotion,
demotion, or discipline, and also recommended persons for
employment whom Defendant subsequently hired. (Pretrial
Order Stipulated Facts 5; Moranville Test.; Macklin Test.;
Aghabeg Test.; Harvey Test.)

Additionally, for the Court to find that Plaintiff
qualifies as an exempt executive, the Defendant must show
that 1) Plaintiff had a primary duty to manage the production
line, and 2) Defendant compensated Plaintiff on a salary
basis. This Court addresses each issue in turn.


**1. Managerial Duties**

Plaintiff qualifies for exempt executive status if
Defendant can prove that Plaintiff's "primary duty" as

Foreman focused on "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. §§ 541.100(a)(2). The Wage and Hour Division of the Department of Labor has stated that management includes the "training of employees; . . . directing the work of employees; . . . appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; . . . apportioning the work among employees; . . . [and] providing for the safety and security of the employees or the property . . . ." 29 C.F.R. § 541.102. Courts have interpreted "primary duty" to mean "the major part, or over 50 percent, of the employee's time," taking into account "all the facts in a particular case." Stein v. J.C. Penney Co., 557 F. Supp 398, 404 (W.D. Tenn. 1983). "An employee can manage while performing other work . . . and 'this other work does not negate the conclusion that his primary duty is management.'" Id. (citing Donovan v. Burger King, 672 F.2d 221, 226 (1st Cir. 1982)).

The findings of fact by the Court demonstrate that while employed as Foreman at Delta Metals, Plaintiff's responsibilities focused predominantly on management. As

13

noted previously, Plaintiff trained the employees on how to perform individual tasks on the production line, supervised the employees on his production line, reviewed steel orders received by Defendant, ensured his line met daily production levels, produced daily production reports, wrote evaluations recommending employees for promotion, made hiring recommendations, disciplined line employees, reviewed complaints and grievances from his line employees, and ran monthly safety meetings. (Pretrial Order Stipulated Facts 5-6; Macklin Test.; Aghabeg Test.; Harvey Test.) The fact that Plaintiff's post-trial brief does not argue that Plaintiff's responsibilities as Foreman were other than managerial reinforces this point. (<u>see</u> D.E. 49, Pl.'s Am. Post-Trial Br.)

Thus, this Court concludes that Plaintiff's "primary duty" as Foreman was "management." The Court now examines the remaining issue of whether Plaintiff was compensated on a "salary basis."

**2. Salary Basis**

To classify Plaintiff as an exempt executive, Defendant must show by the greater weight or preponderance of the evidence that Plaintiff received his compensation "on a salary basis." 29 C.F.R. § 541.100(a)(1). Under 29 C.F.R. § 541.602(a), an employee earns his pay on a "salary basis" if

14

the employee "regularly receives each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a). "Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability . . . if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability." 29 C.F.R. § 541.602(b)(2).

Defendant can pay its employees "additional compensation based on hours worked beyond the normal work week, including being paid a straight-time hourly amount," without losing the exemption. 29 C.F.R. § 541.604. Courts have consistently held, however, that "[d]eductions for absences of less than a day are inconsistent with salary status." Mezger v. Price CPAs, PLLC, No. 3:08-cv-0163, 2008 U.S. Dist. LEXIS 55311, at *7 (M.D. Tenn. July 21, 2008) (quoting Mich. Ass'n of Gov't Employees v. Mich. Dep't of Corr., 992 F.2d 82, 84 (6th Cir.1993)); Guerrero v. J.W. Hutton, Inc., 458 F.3d 830, 836 (8th Cir. 2006) (noting that the salary basis test prohibits deductions from an employee's salary for partial-day personal absences); Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d

261, 265 (5th Cir. 2000) (same); <u>Piscione v. Ernst & Young,</u>
<u>L.L.P.</u>, 171 F.3d 527, 534 (7th Cir. 1999) (same).

"Employers wishing to account for partial-day absences
of salaried employees . . . may require the employee to work
extra hours or take vacation time or paid time off . . . [i]t
is only when an employer actually deducts from an employee's
paycheck that the employee is ineligible for the exemption."
<u>Mezger</u>, 2008 U.S. Dist. LEXIS 55311, at *7 (<u>quoting</u> <u>Renfro v.</u>
<u>Ind. Mich. Power Co.</u>, 370 F.3d 512, 516 (6th Cir. 2004)).  If
it is established that Defendant had an "actual practice" of
making improper deductions, the court can conclude that
Defendant "did not intend to pay employees on a salary
basis."  29 C.F.R. § 541.603(a).

Defendant asserts in its post-trial brief that the
partial-day deductions of Plaintiff's pay were the result of
timekeeping errors.  (D.E. 47, Def.'s Post-trial Br. 4-5.)
Defendant claims that the absentee calendars maintained by
Mr. Moranville "were not sent to the payroll clerk and were
not used to make partial deductions from an employee's pay."[9]
(<u>Id.</u> at 5.)  Defendant argues that it did not intend to make
deductions from Plaintiff's pay, but rather that the
deductions stemmed from "human error."  (<u>Id.</u>)

---

[9] Mr. Moranville reviewed the time cards of employees solely to note their
hours worked over forty for regulatory purposes.  (Moranville Test.)

Defendant relies heavily on Acs v. Detroit Edison Co.,
444 F.3d 763, 767 (6th Cir. 2006), where the Sixth Circuit
affirmed the district court's determination that even though
Detroit Edison made deductions from its employees' pay, the
company paid employees on a salary basis.  Id. at 771.  The
Acs court relied on a Department of Labor opinion letter
presenting similar facts.  While the Acs Plaintiffs claimed
that they identified forty occasions over a six-and-a-half
year time period where Detroit Edison made deductions from
its employees' salaries, the court concluded that a "healthy
percentage of these shortfalls . . . 'involved the types of
situations where an employer may lawfully reduce' the
employee's salary and the 'remaining incidents' were the
result of employee time-keeping errors."  Id. (internal
citations omitted).

The facts before this Court are different from Acs in
several important ways.  Detroit Edison had a written policy
instructing its employees to report forty hours worked each
week even if they worked fewer hours, in order to ensure they
received "1/26th of their annual salary every two-week pay
period."  Acs, 444 F.3d at 766.  In essence, a company
employee who worked fewer than forty hours would add back in
"free" hours to make up the shortfall.  Id.  Detroit Edison
used an hourly payroll system for accrual management and to

17

ensure its salaried employees received hourly payments for
hours worked over forty. Id.

Unlike the case before the Court, employees of Detroit
Edison received a pre-determined salary. Id. at 769.
Defendant routinely made deductions from Plaintiff's pay for
hours worked under forty. Defendant required Plaintiff to
use compensatory time to make up for any shortfalls in hours.
(Aghabeg Test.) Defendant deducted from Plaintiff's paycheck
at an hourly rate for each hour worked fewer than forty in a
given week. (Macklin Test., Aghabeg Test.) Defendant had no
written policy explaining the deductions or when employees
could use compensatory time to make up for shortfalls.
(Aghabeg Test.) The preponderance of the evidence supports
the conclusion that Defendant engaged in a practice of
deducting Plaintiff's salary based on the number of hours
worked below forty. Thus, Plaintiff did not receive a
guaranteed salary.

Further, in Acs, the employees themselves were
responsible for the time-keeping errors. When these errors
occurred, Detroit Edison employees would receive paychecks
lower than their guaranteed salary. Id. at 768, 770. The
Sixth Circuit's opinion emphasized that "any shortage that
results from the employee's error or omission may be adjusted
by [the employee] completing the adjustment form" provided by

Detroit Edison. Id. at 769. Consequently, the Sixth Circuit concluded that "[t]he fact that an adjustment process exists to correct such errors indicates that any initial underpayments caused by time-entry errors, like clerical and mechanical errors, are inadvertent and may be part of any payroll system that is subject to human error." Id. (citing Department of Labor Opinion Letter, 2003 DOLWH LEXIS 3, at *7-8).

By contrast, the payroll clerk's actions rather than the employees' actions caused the time-keeping entries in this case. (Moranville Test.) Defendant deducted Plaintiff's pay at an hourly rate for hours below forty. Plaintiff had no control over the twenty-five deductions, and Defendant provided no formal adjustment mechanism to enable Plaintiff to challenge the deductions. (Trial Ex. 13; Aghabeg Test.)

Even though Defendant presented evidence that the payroll clerk did not use Delta Metal's absentee calendar when making the deductions, Defendant failed to present evidence showing that Defendant lacked the intent that payroll make deductions from Plaintiff's salary. Defendant has failed to meet its burden in showing that it did not have a company practice of making deductions from Plaintiff's paycheck. The compensation scheme and nature of the deductions taken in this case differ significantly from the

circumstances present in Acs and the Department of Labor's Opinion Letter from 2003.  Acs cannot be read to support a finding in this case that Defendant paid Plaintiff on a salary basis.

This Court concludes that Plaintiff did not receive his pay on a salary basis.  Thus, Plaintiff does not qualify as an exempt executive under 29 U.S.C. § 213(a) and is entitled to overtime for hours worked in excess of forty during his employment as Foreman.

Defendant has also challenged the scope of Plaintiff's overtime damages.  "If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions."  29 C.F.R. § 541.603(b).  Defendant argues that the Sixth Circuit in Baden-Winterwood v. Life Time Fitness, Inc., 566 F.3d 618 (6th Cir. 2009), interpreted this "time period" to mean only the pay periods when Defendant made improper deductions. This Court agrees with Plaintiff that Baden-Winterwood did not adopt such a narrow reading of what constitutes the "time period" under § 541.603(b).  Because that case concerned only three distinct, improper deductions during pay periods from

November to December of 2005, the Sixth Circuit affirmed the district court's decision to limit Plaintiff's recovery to that narrow period.  See id. at 633-34.  This case, by contrast, involves over two dozen partial-day deductions. (Trial Ex. 13; Aghabag Test.)

The Department of Labor's Commentary to 29 C.F.R. § 541.603 focuses on the employer's intent to pay on a salary basis and rejects the notion that "only employees who suffered an actual deduction should lose their exempt status."[10]  Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22180 (April 23, 2004).  Section 541.603 focuses on the employee's job classification during the *time period* of deductions, not merely during the specific pay periods where the employer actually made deductions.  See 29 C.F.R. § 541.603(b); see also Baden-Winterwood, 566 F.3d at 634.  Baden-Winterwood does not extend so broadly to limit Plaintiff's ability to

---

[10] In support of this proposition, the Department of Labor reasoned as follows: "An exempt employee who has not suffered an actual deduction nonetheless may be harmed by an employer docking the pay of a similarly situated co-worker. An exempt employee in the same job classification working for the same manager responsible for making improper deductions, for example, may choose not to leave work early for a parent-teacher conference for fear that her pay will be reduced, and thus is also suffering harm as a result of the manager's improper practices.  Because exempt employees in the same job classification working for the same managers responsible for the actual improper deductions may reasonably believe that their salary will also be docked, such employees have also suffered harm and therefore should also lose their exempt status." Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22180 (April 23, 2004).

recover overtime solely to the specific pay-periods where Defendant made deductions from his paycheck.

Thus, the Court concludes that Plaintiff was a non-exempt executive during his employment as Foreman. The Court must next address the applicable statute of limitations in this case to determine the proper amount of damages Plaintiff should receive.

## B. Statute of Limitations

Pursuant to 29 U.S.C. § 255(a), wage claims occurring beyond two years prior to the date the complaint is filed are barred, unless the violation is found to be willful, in which case the period for commencement of suit is three years. The Supreme Court requires evidence that Defendant displayed knowing or reckless disregard as to whether the conduct violated the FLSA. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132-33 (1988). It is not enough to show that the employer "acted without a reasonable basis for believing that it was complying with the statute," because willfulness requires at least recklessness. Id. at 134-35. "[I]t is not enough to show that the employer 'acted without a reasonable basis for believing that it was complying with the statute,' because willfulness requires at least recklessness. If the employer was aware of the specific FLSA requirements, for

example, from prior Wage and Hour investigations, FLSA violations have been found to be willful." Chao v. Yang, 2007 WL 7209596, at *4 (Tenn. Aug. 13, 2007).

Plaintiff asserts that Mr. Moranville's failure to properly investigate how Plaintiff received his compensation constituted reckless disregard by Defendant of its requirements under the FLSA. (see D.E. 49, Pl.'s Am. Post-Trial Br.) The Court does not agree. Defendant has never been subject to any investigation by the Department of Labor's Wage and Hour Division. Mr. Moranville, Personnel Manager for Delta Metals, attended a seminar on how to classify exempt employees under the FLSA. (Moranville Test.) He subsequently conducted a review of the exempt or non-exempt status of Delta Metals employees. (Id.) Mr. Moranville and Mr. Aghabeg testified that they believed Defendant was paid on a salary basis and that the partial-day deductions from Defendant's salary were the result of a breakdown in communications between the payroll clerk and the Human Resources Department. (Moranville Test.; Aghabeg Test.)

The Court does not find that Defendant displayed reckless disregard in classifying Plaintiff as a salaried employee. Defendant believed it was in compliance with the FLSA when making this determination. Therefore, the Court

concludes that pursuant to 29 U.S.C. § 255(a), the two-year statute of limitations is applicable. Defendant is entitled to wage claims falling within the two years prior to the date the complaint was filed. The Court next addresses the damages Plaintiff should receive.

## C. Damages

Plaintiff argues that he is entitled to damages for unpaid overtime wages, liquidated damages, attorney's fees and costs. This Court examines each in turn.

## 1. Unpaid Overtime Wages

This Court has concluded that because Plaintiff was not an "exempt executive" under 29 U.S.C. § 213 of the FLSA, Plaintiff is entitled to unpaid overtime wages. The parties have stipulated as to appropriate damages if the three-year statute of limitations is applicable. (see Trial Ex. 1, 2.)[11] "Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well."

---

[11] The parties' damage calculations considered the difference between the amount actually paid to Plaintiff for hours worked over forty per week, and the amount Plaintiff would have earned had he received time-and-a-half for all hours worked over forty. (see Trial Ex. 1, 2.)

Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 829

(6th Cir. 2000) (quoting Ferguson v. Neighborhood Housing

Services, 780 F.2d 549, 551 (6th Cir. 1986) (citations

omitted).  "Judicial admissions are formal admissions in the

pleadings which have the effect of withdrawing a fact from

issue and dispensing wholly with the need for proof of the

fact." Id. (citations omitted).

Thus, pursuant to 29 U.S.C. § 216, this Court awards

Plaintiff $300.15 in damages for unpaid overtime.  The Court

will now consider whether Plaintiff is entitled to an award

of liquidated damages.


**2. Liquidated Damages**

The FLSA states that "[a]ny employer who violates . . .

[29 U.S.C. §207] shall be liable to the employee or employees

affected in the amount of their unpaid minimum wages, or

their unpaid overtime compensation, as the case may be, and

in an additional amount as liquidated damages."  29 U.S.C.

§216(b).  This Court has the discretion to limit or deny an

award of liquidated damages if the employer shows that it

acted in good faith and with reasonable grounds for believing

that its act or omission was not a violation of the FLSA.  29

U.S.C. § 260; see Elwell v. Univ. Hosp. Home Care Serv., 276

F.3d 832, 840 (6th Cir. 2002).  The employer bears a

"substantial" burden to demonstrate its good faith and reasonable grounds for its incorrect classification of Plaintiff.  See Elwell, 276 F.3d at 840.  An employer "must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions."  Id.

This Court has already concluded that Defendant did not show reckless disregard toward its FLSA obligations, and therefore the two-year statute of limitations is applicable. Defendant has met its burden to show that it acted in good faith and had reasonable grounds for believing that its decision regarding Plaintiff's exempt status was not in violation of the FLSA, for the reasons noted previously.

Therefore, pursuant to 29 U.S.C. § 216 of the Fair Labor Standards Act, Plaintiff is not entitled to an award of liquidated damages.


## II. Conclusion

For all of the foregoing reasons, this Court finds that Plaintiff did not qualify as an exempt employee and therefore is entitled to unpaid overtime.  The Court also finds that the two-year statute of limitations is applicable in this case.  Judgment is accordingly ENTERED in favor of Plaintiff in the amount of $300.15 in damages for unpaid overtime.  The Court does not award liquidated damages to Plaintiff.

SO ORDERED this 4th day of January, 2011.


/s/ JON PHIPPS MCCALLA
CHIEF UNITED STATES DISTRICT JUDGE